IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATSY ANN MORGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:10-CV-01061-BF |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. Patsy Ann Morgan ("Plaintiff") brings this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Title II and Title XVI benefits under 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). For the foregoing reasons, the Commissioner's decision is affirmed in part and reversed in part and remanded for further administrative proceedings.

### I. BACKGROUND[1]

*A. Procedural History*

On April 22, 2005, Plaintiff filed applications for Title II and Title XVI benefits, alleging a disability onset date of April 1, 2002. (Pl. Br. 1.) Plaintiff claimed she was disabled due to chronic fatigue, chronic pain, and coordination and balance problems. (Tr. 19, 94-96, 106, 578-81.) The claims were denied initially and upon reconsideration. (Pl. Br. 1.) Plaintiff timely requested a

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

hearing before an administrative law judge ("ALJ"), and a hearing was scheduled for November 13, 2006 in Dallas, Texas. (Tr. 582.) On November 13, 2006, Plaintiff requested the assistance of a representative and, thus, the ALJ granted her a thirty day extension. (Tr. 585.) A hearing was then held on February 20, 2007. (Tr. 587.) Plaintiff testified at the hearing, as well as a vocational expert ("VE"). (Tr. 589.) The ALJ issued an unfavorable decision on March 30, 2007, finding Plaintiff had not been under a disability from her date of onset through the date of the decision. (Tr. 511-19.) Plaintiff requested review of the ALJ's decision by the Appeals Council and review was granted. (Tr. 530-31.) On April 25, 2008, the Appeals Council remanded the case to the ALJ to (1) give consideration to the nonexamining source opinions; (2) evaluate Plaintiff's subjective complaints and describe how her symptoms were evaluated; (3) give further consideration to Plaintiff's residual functional capacity; and (4) evaluate the claimant's ability to perform her past relevant work. (Tr. 530-31.)

In accordance with the remand, a second hearing was held by the ALJ on September 24, 2008. (Tr. 613.) Again, Plaintiff and a VE testified at the hearing. (Tr. 19.) The ALJ issued an unfavorable decision on November 19, 2008, again finding that Plaintiff was not disabled. (Tr. 21.) Plaintiff then requested review from the Appeals Council, but this time it was denied on February 24, 2010. (Tr. 10-12.) Plaintiff filed this case on May 26, 2010, seeking judicial review of the administrative proceedings (doc. 1.) This matter is ripe for consideration on the merits.

***B. Factual History***

1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born May 22, 1954. (Tr. 25, 591.) Plaintiff has a tenth grade education. (Tr. 609.) She has past relevant work as a sales clerk and a ticket seller. (Tr. 639.) Plaintiff met the

2

insured status requirement of the Act through December 31, 2002. (Tr. 21.)

### 2. Plaintiff's Relevant Medical Evidence

On July 29, 2002, Plaintiff obtained a medical source statement which supported her disability. (Tr. 23.) Plaintiff complained of depressive episodes, including thoughts of committing suicide, headaches and dizziness. (Tr. 22.) The medical source statement stated that Plaintiff's disability was only expected to last six months. (Tr. 23.) Plaintiff received follow-up care on April 9, 2003 and she reported arthralgias and headaches. (Tr. 23.) Plaintiff also rated her pain as a zero on a scale of zero to ten with ten being the most severe. (Tr. 23.) Between February 2002 and January 2003, Plaintiff was treated for her bipolar disorder at MHMR, where she received a Global Assessment of Functioning or GAF of 61 to 70.[2] (Tr. 23.) In January 2003, Plaintiff obtained a neuropsychological evaluation due to complaints of ataxi and short-term memory loss. (Tr. 23.)

In June 2005, Plaintiff recommenced medical care due to her complaints of vertigo and dizziness. (Tr. 23.) Plaintiff reported that she was still able to do a full range of daily activities, such as cooking, caring for a pet, going out to dinner, reading, watching television and working on the computer. (Tr. 23-24.) In June 2005, Plaintiff obtained a consultative psychological evaluation where she presented as euthymic for her bipolar disorder and denied depression problems. (Tr. 24.) In October of 2005, Plaintiff's treating physician referred her to a specialist for her chronic dizziness. (Tr. 24.) Plaintiff underwent a battery of tests whereby no significant abnormalities were found. (Tr. 24.) In 2006, Plaintiff was ultimately diagnosed with multiple sclerosis. (Tr. 24.) At her

---

[2] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *See id.*

examination in July 2007, Plaintiff complained of weakness in her left leg and demonstrated a slightly impaired ability to stand and walk. (Tr. 24.) In July 2007, Plaintiff obtained another consultative psychiatric examination where she received a GAF of 50, revealing moderate to serious limitations in function. (Tr. 24.)

### C. The ALJ's Findings

First, the ALJ found that Plaintiff last met the insured status requirements of the Act through December 31, 2002. (Tr. 21.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date. (Tr. 21.) Third, he found Plaintiff to have the severe impairments of bipolar disorder, hypothyroidism, and multiple sclerosis. (Tr. 21.) The ALJ noted in his findings that Plaintiff's medical history in 2002 included bipolar disorder and hypothyroidism, but Plaintiff wasn't diagnosed with multiple sclerosis until 2006. (Tr. 21.) Fourth, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Regulations. (Tr. 22.)

Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to lift/carry ten pounds frequently and ten pounds occasionally, stand/walk four to six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (Tr. 22.) Plaintiff's ability to push or pull would be limited to the weights given. (Tr. 22.) Plaintiff can occasionally crawl, squat, stoop and bend, but she could not climb ladders, work at heights, or work around hazardous machinery. (Tr. 22.) Plaintiff could concentrate for extended periods of time, respond appropriately to routine changes in work environment, and perform detailed tasks. (Tr. 22.) In making this determination, the ALJ found the testimony of Plaintiff regarding the intensity, persistence, and limiting effects of her symptoms not credible. (Tr. 23.)

4

Sixth, the ALJ determined that Plaintiff is capable of performing past relevant work as a ticket seller. (Tr. 25.) The ALJ noted in his findings that he compared the Plaintiff's RFC with the testimony of the VE regarding the demands of the work as a ticket seller, and he found that Plaintiff was able to do the work as actually and generally performed. (Tr. 25.) Finally, he found that Plaintiff has not been under a disability, as defined by the Act, from April 1, 2002 through the date of the decision. (Tr. 25.)

## II. ANALYSIS

### *A. Standard of Review*

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

  4.  If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

  5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*.

  The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### *B. Issues for Review*

  Plaintiff argues that the ALJ erred by (1) failing to follow the Appeals Council's Remand Order by not properly assessing the state agency medical consultant's opinions and (2) failing to properly evaluate Plaintiff's RFC in finding that Plaintiff is capable of performing past relevant work. Defendant counters that (1) the ALJ properly followed the Appeals Council's Remand Order

and (2) substantial evidence supports the ALJ's RFC finding.

### C. Appeals Council's Remand Order

The ALJ initially determined that Plaintiff was not disabled, under the Act, on March 30, 2007. (Tr. 511-19.) On April 25, 2008, that decision was remanded by the Appeals Council. (Tr. 530-31.) The Appeals Council ordered that the ALJ:

> Give consideration to the nonexamining source opinions, pursuant to the provisions of 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.
>
> Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p.
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).
>
> Further evaluate the claimant's ability to perform her past relevant work, pursuant to the guidelines set forth in Social Security Ruling 82-62.

(Tr. 531.) Plaintiff contends that the ALJ did not follow the Remand Order in that he did not give consideration to the nonexamining source opinions and explain the weight given to such opinion evidence. (Pl. Br. 5.) Specifically, Plaintiff argues that the ALJ did not reconsider the nonexamining source opinions of Dr. James Wright and Dr. Mehdi Sharifian. (Pl. Br. 5-6.)

Pursuant to the Appeals Council's Remand Order, the ALJ held a second hearing on September 24, 2008. (Tr. 613.) After that hearing, the ALJ issued its second determination that Plaintiff was not disabled under the Act. (Tr. 21.) In the ALJ's Findings of Fact and Conclusions of Law, he stated "[t]his decision is based on updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency

7

Case 3:10-cv-01061-BF   Document 28   Filed 09/30/11   Page 8 of 16   PageID 759

physician." (Tr. 24.) Dr. Wright wrote his opinion on July 6, 2005 and Dr. Sharifian wrote his opinion on July 7, 2005. (Tr. 190-215.) Both doctors only considered medical records from January 2000 to June 2005 in making their opinions. (Tr. 3, 216-363.) In making his second decision, the ALJ considered additional medical records covering the dates of June 2005 through January 2008. (Tr. 364-496, 499-507.) Dr. Wright and Dr. Sharifian didn't have a chance to review these records, as they both made their opinions in July 2005. (Tr. 190-215.)

Plaintiff cites federal regulations 20 CFR 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) to support her argument. (Pl. Br. 6.) 20 CFR 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) provide that "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . ." Those regulations further state that "[w]hen administrative law judges consider these opinions, they will evaluate them using the rules in paragraphs (a) through (e) of this section." 20 CFR 404.1527(f)(2)(iii) and 416.927(f)(2)(iii). Paragraph (d) in both of the federal regulations explains how medical opinions are weighed by the administrative law judges. 20 CFR 404.1527(d) and 416.927(d). Paragraph (d)(6) explains "other factors" that are considered in weighing medical opinions:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For, example the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 CFR 404.1527(d)(6) and 416.927(d)(6).

This Court finds the Plaintiff's argument unavailing. In the ALJ's Findings of Fact and

Conclusions of Law, he did explain why he did not consider the nonexamining source opinions and thus gave their opinions no weight. (Tr. 24.) He explained that his decision was based on updated evidence that was unavailable for review by the State Agency, and a different interpretation of the evidence that they had reviewed. (Tr. 24.) Although the ALJ did not go into great detail on why he gave their opinions no weight, paragraph (d)(6) of the federal regulations states that a factor that the ALJ may consider when weighing opinions is the extent to which a source is familiar with all the information in the case file. 20 CFR 404.1527(d)(6) and 416.927(d)(6). Here, the ALJ utilized numerous medical records, that simply weren't available at the time Dr. Wright and Dr. Sharifian made their opinions, in making his decision. (Tr. 24, 364-496, 499-507.) Thus, he accorded their opinions no weight. (Tr. 24.)

Moreover, upon the ALJ's second determination that Plaintiff was not disabled under the Act, Plaintiff again requested review to the Appeals Council. (Tr. 10-12.) This time review was denied. (Tr. 10-12.) The Appeals Council explained that "[w]e found no reason under our rules to review the Administrative Law Judge's decision." (Tr. 10.) Thus, it can be assumed that the Appeals Council found that the ALJ's decision now complied with all of the social security rules and federal regulations. (Tr. 10.) If the ALJ had not followed the Remand Order by not giving consideration to the nonexamining source opinions and explaining the weight of their evidence, his second decision would still have been in violation of 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p. (*See* Tr. 531.) However, the Appeals Council found no rule violations in the ALJ's second decision, as evidenced in their denial letter to Plaintiff. (Tr. 10.)

Additionally, 20 CFR 404.977(e)(2) provides that the Appeals Council can remand a case again to an ALJ should it find that more evidence is required. If the ALJ did not comply with its

9

previous Remand Order, it can reasonably be assumed that the Appeals Council would have still required more evidence and thus would have remanded the case again. *See* 20 CFR 404.977(e)(2).

Because the ALJ explained in his Findings of Fact and Conclusions of Law why he did not consider the nonexamining source opinions, and because the Appeals Council denied Plaintiff's second request for review, this Court finds that the ALJ followed the Appeals Council's Remand Order and properly assessed the State Agency nonexamining medical source opinions.

### *D. ALJ's RFC Finding*

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's RFC in finding that Plaintiff is capable of performing past relevant work as a ticket seller. (Pl. Br. 7.) Before considering step four of the sequential evaluation process, the ALJ must determine the claimant's RFC. 20 CFR 404.1520(e) and 416.920(e). A person's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. 20 CFR 404.1545. The ALJ is responsible for determining a claimant's RFC if the claimant is at the ALJ hearing level. 20 CFR 404.1546(c). In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. 20 CFR 404.1545(a)(3).

Once the ALJ has assessed the claimant's RFC, step four of the sequential evaluation process allows the ALJ to determine whether the claimant has the RFC to perform the physical and mental requirements of her past relevant work. 20 CFR 404.1520(f) and 416.920(f). Past relevant work is defined as substantial gainful activity, done in the last fifteen years, that lasted long enough so that a person learned how to do it. 20 CFR 404.1560(b)(1). In determining whether the claimant can perform her past relevant work, the ALJ may consider information provided by the claimant

regarding such work, testimony provided by a VE, or other sources such as the Dictionary of Occupational Titles ("DOT"). 20 CFR 404.1560(b)(2). If the claimant can perform her past relevant work, then she is not disabled under the Act. 20 CFR 404.1520(a) and 404.1560(b)(3).

### *a. Reasoning Level*

First, Plaintiff argues that the reasoning level accorded to Plaintiff by the ALJ directly conflicts with the DOT. (Pl. Br. 7.) The ALJ determined, in Plaintiff's RFC, that Plaintiff "could concentrate for extended periods of time, respond appropriately to routine changes in work environment, and perform detailed tasks." (Tr. 22.) In the Dictionary of Occupational Titles, Appendix C provides a General Educational Development Scale which describes the reasoning development, mathematical development and language development that is required of each occupation for satisfactory job performance. *See* Dictionary of Occupational Titles, Appendix C, Components of the Definition Trailer (4th ed., Revised 1991). Under reasoning development, there are six levels. *Id.* Ticket seller is classified at DOT Title No. 211.467-030 and requires a reasoning level of three. DOT, List #211.467-030. Level three reasoning is defined as: "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer. Level two reasoning is defined as: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

In the ALJ's Findings of Fact and Conclusions of Law, he stated that Plaintiff "could perform the demands of detailed, but not complex work." (Tr. 24.) In her brief, Plaintiff argues that dealing with several variables, as required in level three reasoning, is complex work. (*See* Pl. Br. 8-9.)

11

Thus, since the ALJ stated Plaintiff cannot perform complex work, she could not have a reasoning level of three and could not satisfactorily perform the job duties of a ticket seller. (*Id.*) To support her argument, Plaintiff states that because level two reasoning specifically uses the word "detailed" and level three reasoning does not, that level three reasoning must rise above detailed tasks and be equivalent to complex tasks. (*See id.*) This Court agrees with Plaintiff that since level three is more demanding than level two, that it would require the ability to perform detailed work, however, nothing in the definition states that it requires complex work.[3] *See* DOT, Appendix C, Components of the Definition Trailer. Plaintiff fails to cite to anything in her brief, or in the DOT, which would support this argument, and the Court finds the argument is without merit.

### *b. Mental RFC Findings*

Next, Plaintiff argues that the ALJ failed to follow a function-by-function analysis of Plaintiff's mental RFC. (Pl. Br. 9.) In the mental RFC findings, the ALJ found that "[t]he claimant could concentrate for extended periods of time, respond appropriately to routine changes in work environment, and perform detailed tasks." (Tr. 22.) In support of her argument, Plaintiff cites to *Otte v. Commissioner of SSA,* No. 3:08-CV-2078, 2010 WL 4363400 at *7 (N.D. Tex. Oct. 18, 2010), where this Court previously found legal error in the ALJ's mental RFC assessment because the ALJ substituted consideration of the basic mental demands of unskilled work for the function-by-function mental RFC analysis required. In *Otte*, the ALJ determined that the claimant had a mental RFC to perform unskilled work. 2010 WL 4363400 at *5. The ALJ in *Otte* assumed that the claimant's

---

[3] The Court notes that there are three reasoning levels that are even higher than level three: levels four, five and six. *See id.* Since level one reasoning requires the ability to carry out "simple" instructions, it makes more sense to assume that level six reasoning would require the ability to carry out "complex" instructions, and level three reasoning would then be somewhere in the middle, but less than complex. *See id.* None of the levels explicitly use the word "complex". *See id.*

failure to meet or equal a listed impairment at step three equated with the capacity to do at least unskilled work. *See id.* at *7. The ALJ made this assumption without performing a function-by-function analysis of the claimant's mental RFC. *See id.*

In the Commissioner's brief, he argues that *Otte* is inapplicable here. This Court agrees. Here, the ALJ explained Plaintiff's basic mental abilities based on all the relevant medical evidence and his personal observations of Plaintiff when she testified at the second administrative hearing. (*See* Tr. 22-24.) The ALJ did not just assume, as the ALJ in *Otte* did, that Plaintiff could perform all unskilled work because she didn't meet or equal a listed impairment at step three. (*See id.*) The Court finds that the ALJ followed the function-by-function mental RFC analysis, as required.

### *c. Physical RFC Findings*

Finally, Plaintiff contends that the physical limitations of her RFC directly conflict with the DOT. (Pl. Br. 10.) In Plaintiff's RFC, the ALJ determined that Plaintiff could "lift/carry 10 pounds frequently and 10 pounds occasionally, stand/walk 4 to 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday." (Tr. 22.) At the second hearing on September 24, 2008, the VE testified that Plaintiff could perform her past relevant work as a ticket seller even if she only had the ability to lift and carry ten pounds frequently and ten pounds occasionally. (Tr. 640.) In the DOT's definition of ticket seller, the work is described as light work: "[e]xerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time)". DOT, List 211.467-030.

The circuits are split on how to handle VE testimony when it conflicts with the provisions of the DOT. Some courts have held that the ALJ may rely on VE testimony to support its decision,

even if it conflicts with the DOT. *See Jones v. Apfel,* 190 F.3d 1224, 1229-30 (11th Cir. 1999); *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995); *Sawyer v. Apfel,* 166 F.3d 1210 (Table), 1998 WL 830653 at *1 (4th Cir. Dec. 2, 1998). On the other hand, the Eighth Circuit has held that the job descriptions contained in the DOT are more reliable than the conflicting testimony of the VE. *Smith v. Shalala,* 46 F.3d 45, 47 (8th Cir. 1995). Other courts, including the Fifth Circuit, have taken more of a "middle ground" approach, allowing the ALJ to rely on the testimony of the VE so long as he explains the reason for deviating from the DOT. *See Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000); *Haddock v. Apfel,* 196 F.3d 1084, 1091-92 (10th Cir. 1999); *Johnson v. Shalala,* 60 F.3d 1428, 1434-35 (9th Cir. 1995); *Tom v. Heckler,* 779 F.2d 1250, 1255-56 (7th Cir. 1985); *Mimms v. Heckler,* 750 F.2d 180, 186 (2nd Cir. 1984). The Fifth Circuit held in *Carey:*

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . ., we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey,* 230 F.3d at 146-47.

Although *Carey's* holding appears to be limited to "implied" or "indirect" conflicts, lower courts in the Fifth Circuit have adopted this "middle ground" approach when dealing with direct conflicts between VE testimony and the DOT as well. *See Johnson v. Barnhart,* 285 F.Supp.2d 899, 913-14 (S.D. Tex. 2003); *Augustine v. Barnhart,* No. 1-00-CV-749, 2002 WL 31098512 at *9-10 (E.D. Tex. Aug. 27, 2002); *Hollan v. Apfel,* No. 3-00-CV-0002-H, 2001 WL 180151 at *6 (N.D.

14

Tex. Feb. 20, 2001); *Conaway v. Astrue,* No. 3-07-CV-0906-BD, 2008 WL 4865549 at *7 (N.D. Tex. Nov. 10, 2008). Hence, in the Fifth Circuit, VE testimony may be accepted over a conflicting provision of the DOT so long as "the record reflects an adequate basis for doing so." *Carey,* 230 F.3d at 146.

Furthermore, Social Security Regulation 00-4p states that occupational testimony provided by a VE should generally be consistent with that of the DOT. SSR 00-4p, 2000 WL 1898704 at *2 (SSA 2000). However, when there is a conflict between the occupational information provided by the VE and that contained in the DOT, the ALJ must obtain a reasonable explanation for the conflict and then provide a basis for relying on the VE testimony over the DOT. *Id.* The Rule further imposes an affirmative duty on the ALJ to ask the VE whether the evidence provided conflicts with any provisions of the DOT. *Id.* at *4.

Here, there is a direct conflict between the testimony of the VE and the DOT provision for the work of a ticket seller. The VE testified that Plaintiff could perform the duties of a ticket seller in spite of her limitation to lift and carry ten pounds frequently and ten pounds occasionally. (Tr. 640.) The DOT provision for a ticket seller states that a person may exert up to twenty pounds of force occasionally and ten pounds frequently. DOT, List 211.467-030. There is no evidence in the record to suggest that either the VE or the ALJ were aware that the VE's testimony conflicted with that of the DOT. However, SSR 00-4p imposes an affirmative duty on the ALJ to inquire as to whether the VE testimony conflicts with the DOT. In finding that the Plaintiff could perform her past relevant work as a ticket seller, the ALJ adopted the testimony of the VE over the DOT. SSR 00-4p explains that when there is a conflict, the ALJ must provide his basis for relying on the VE testimony over the DOT. If the ALJ relies on the VE testimony over the DOT, the ALJ must

15

describe a "plausible reason" for accepting that testimony over the DOT so that the hearing decision is susceptible to meaningful judicial review. *Augustine,* 2002 WL 31098512 at *10; *see Conaway,* 2008 WL 4865549 at *7. In this case, the ALJ provided no such reason. (*See* Tr. 19-25.) Accordingly, this part of the hearing decision is not supported by substantial evidence and must be reversed.

### III. CONCLUSION

Because the ALJ failed to properly explain his reason for accepting the VE occupational testimony over the provisions of the DOT in assessing Plaintiff's RFC, this part of the decision is REVERSED and REMANDED for reconsideration. All other parts of the decision are AFFIRMED.

SO ORDERED, September 30th, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

16